IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 24-CR-320-JFH |
| ERIK REY GARCIA, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Erik Rey Garcia's ("Defendant") Motion to Suppress Evidence and Brief in Support. (Docket No. 21). On November 6, 2024, United States Chief District Judge John F. Heil, III, referred the subject motion to the undersigned United States Magistrate Judge for a Report and Recommendation. (Docket No. 23). On November 15, 2024, the undersigned conducted an evidentiary hearing and received testimonial evidence regarding the Motion. Upon consideration of the evidence presented by the parties, including the dashcam videos and witness testimony from the hearing, the undersigned **RECOMMENDS** the Motion to Suppress Evidence be **DENIED**.

### Factual Background and Procedural History

On May 12, 2024, at approximately 1:00 a.m., Trooper Elijah Presley ("Trooper Presley") with the Oklahoma Highway Patrol ("OHP") was patrolling his assigned area, which includes the northern portion of Okmulgee County.[1] While driving his patrol vehicle, a black Dodge Charger, in a northerly direction on Highway 75 near 221st Street, he observed a black Nissan Titan truck

---

[1] Trooper Presley testified that he has been employed by OHP for approximately two and a half to three years. Overall, he has over ten years of law enforcement experience, including employment with the Memphis Police Department and the Okmulgee County Sheriff's Office. His assigned patrol area includes Creek and Okmulgee Counties.

cross over the right fog line onto the shoulder approximately two to three times.[2] Trooper Presley was traveling in the left-hand lane, and testified there were two other vehicles behind the truck and another in front of it, all traveling together in close proximity. At the time he observed the traffic violations, he was approximately 100 yards behind the vehicles.

Trooper Presley was concerned the driver of the truck, later identified as Defendant, was intoxicated. Moreover, he did not observe the other vehicles traveling near Defendant's truck committing similar violations. As a result, Trooper Presley sped up and activated his emergency lights, which also activated his dash camera system ("dashcam") in his patrol vehicle.[3] After activating his emergency lights (and dashcam), he observed Defendant cross the right fog line two more times.

Trooper Presley testified that at the time of the traffic stop the concrete roadway was marked with two solid-white fog lines with a dashed center line. He described the roadway as straight and in good condition with no potholes. At the time of the stop, traffic was light to medium, and the weather conditions posed no concern—there was no rain, high wind, or fog. He did not observe anything about Defendant's truck that would cause it to cross the fog line. Moreover, his patrol vehicle was clearly marked, as it included reflective decals identifying him as a state trooper on the quarter panels, had the words "State Trooper" on the back, and a distinctive

---

[2] Trooper Presley described a fog line as a solid, white or yellow line that separates the roadway from the shoulder of the road.

[3] Trooper Presley testified the dashcam system in his patrol vehicle includes three dashcams, two that face outward from the vehicle and one that faces inside the cabin. The outward-facing dashcams face the same direction, with the secondary camera serving as a backup camera. He described the quality of video from the second camera as worse than the first and explained that both cameras have a limited field of view compared to a person's field of vision. He testified that once activated, the dashcam records video thirty seconds back from its initial activation.

push bar on the front of the vehicle. He was driving his patrol vehicle with dimmed headlights (not brights), and the two other vehicles behind Defendant also had on their headlights. He does not know if the headlights impeded Defendant's vision. Further, Trooper Presley testified that Defendant's truck had a Muskogee Nation tag, and although he observed the traffic violations south of the Tulsa County line, the traffic stop occurred in Tulsa County.

On October 8, 2024, the grand jury returned a single count Indictment charging Defendant with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), including a forfeiture allegation pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c). (Docket No. 2).

## Discussion

In his Motion, Defendant challenges the justification for the traffic stop of his vehicle and seeks suppression of the handgun and ammunition found because the traffic stop was unjustified and unlawful. (Docket No. 21). Specifically, he contends that Trooper Presley's dashcam video does not show that the tires of his vehicle touched or crossed over the fog line, and he therefore did not commit a violation of Okla. Stat. tit. 47, § 11-309, rendering the stop unjustified. *Id.* at 4. Moreover, he asserts that even if his vehicle touched the fog line or crossed over it, the statute required only that he drive his vehicle "as nearly as practicable entirely within a single lane[,]" and he satisfied this requirement in light of the conditions. *Id.* at 4–9 (quoting Okla. Stat. tit. 47, § 11-309). In response, the Government argues that the traffic stop, and subsequent search and seizure, were lawful and therefore no evidence discovered in Defendant's vehicle should be suppressed. (Docket No. 27). The undersigned finds that Defendant's arguments are without merit.

Pursuant to the Fourth Amendment, citizens are guaranteed the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const.,

amend. IV. Thus, unless a valid exception applies, a warrantless search and seizure is *per se* unreasonable. *United States v. Vasquez*, Case No. 24-cr-224-JDR, 2024 WL 4471955, at *3 (N.D. Okla. Oct. 11, 2024) (citing *United States v. Lowe*, 999 F.2d 448, 451 (10th Cir. 1993)).

"A routine traffic stop is considered a seizure within the meaning of the Fourth Amendment and is analyzed under the principles applicable to investigative detentions . . . ." *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015). Therefore, a traffic stop must be justified at its inception. *United States v. Salas*, 756 F.3d 1196, 1200 (10th Cir. 2014) (citing *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008)). "A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009); *see also United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) ("A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.").

In determining whether reasonable suspicion exists, the Court "look[s] to the totality of circumstances . . . ." *United States v. Harmon*, 742 F.3d 451, 456 (10th Cir. 2014) (citing *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011)). The inquiry is an objective one, and "the officer's subjective motives are irrelevant." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008). Further, because courts generally "defer to the reasonable inferences of law enforcement officers[,]" *Harmon*, 742 F.3d at 456 (citing *Winder*, 557 F.3d at 1133), "[a]n officer's reasonable mistake of fact does not a constitutional violation make." *United States v. Cunningham*, 630 F. App'x 873, 876 (10th Cir. 2015). Additionally, a "reasonable 'mistake of law can . . . give rise to the reasonable suspicion necessary to uphold [a] seizure under the Fourth

Amendment.'" *Cunningham*, 630 F. App'x at 876 (quoting *Heien v. North Carolina*, 574 U.S. 54, 57 (2014)). However, "[a]n officer's subjective understanding of the law is irrelevant; the mistake of law must be *objectively* reasonable." *Id.* at 876–77 (citing *Heien*, 574 U.S. at 66) (emphasis original). "Moreover, an officer's mistake of law may be reasonable if the law is ambiguous (reasonable minds could differ on the interpretation) and it has never been previously construed by the relevant courts." *Id.* at 877 (citing *Heien*, 574 U.S. at 67).

Trooper Presley stopped Defendant for an alleged violation of Okla. Stat. tit. 47, § 11-309. The statute provides that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane[.]" Okla. Stat. tit. 47, § 11-309(1). Defendant asserts that, because the dashcam video does not show his tires "touched or crossed over the fog line at any time[,]" the traffic stop was not justified at its inception. (Docket No. 21 at 4). The undersigned disagrees with Defendant's assertions.

Around 1:00 a.m., Trooper Presley stopped Defendant after observing Defendant's passenger-side tires cross over the right fog line of Highway 75 four to five times. Because the dashcam videos did not begin recording and retaining footage until Trooper Presley activated his lights, only two of the alleged four to five traffic violations were captured on video.[4] Trooper

---

[4] The dashcam videos (attached as exhibits to Defendant's Motion and thereafter admitted as exhibits at the hearing) confirm Trooper Presley's testimony that he was traveling in the left-hand lane of traffic while approaching Defendant's truck from behind, which was traveling in the right-hand lane. Prior to reaching Defendant's vehicle, Trooper Presley passed two vehicles with their headlights on that were following behind Defendant. Additionally, the videos confirm that once Trooper Presley made contact with Defendant in his vehicle, he immediately asked Defendant if he had been drinking and explained he stopped Defendant because he was "riding the fog line." When questioned about the dashcam videos at the hearing, Trooper Presley maintained the videos show Defendant's truck crossed the fog line twice. Upon review of the dashcam videos, the undersigned could not confirm that Defendant's truck crossed the line. However, Trooper Presley

Presley, concerned about possible driver intoxication, initiated the traffic stop based on multiple violations of Okla. Stat. tit. 47, § 11-309(1).  The undersigned finds Trooper Presley to be a credible witness.[5]  *United States v. Dirden*, 38 F.3d 1131, 1139 (10th Cir. 1994) (citing *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991)) ("At a suppression hearing, the credibility of the witnesses and the weight to be given the evidence, together with the inferences to be drawn from that evidence, all are matters to be determined by the court.").  Therefore, the undersigned is unpersuaded by Defendant's argument that a violation did not occur simply because it was not captured on the dashcam videos.  The traffic stop was lawful, and the fruits of the subsequent search need not be suppressed.

Defendant also argues that, even if his tires crossed over the fog line, this did not constitute an automatic traffic violation. (Docket No. 21 at 6).  Defendant contends that the phrase "as nearly as practicable" does not mean that drivers are strictly liable for any lane deviation.  *Id.*  Rather, a law enforcement officer should consider the surrounding circumstances of an alleged traffic violation to "avoid penalizing safe, reasonably explainable deviations of lane lines." *Id.* (citing *State v. Prado*, 186 P.3d 1186, 1186–87 (Wash. Ct. App. 2008); *State v. Livingston*, 75 P.3d 1103, 1106 (Ariz. Ct. App. 2003)).  However, "the Tenth Circuit has implied that driving on a lane marker is sufficient to justify a stop under an 'as nearly as practicable' statute, [and it] has never

---

also testified that he observed Defendant's truck cross the line, and his vision is of a better quality and range than that captured by the dashcam videos.

[5] Defendant also challenged Trooper Presley's credibility at the hearing by pointing out that his report of the traffic stop did not include his suspicions that Defendant was intoxicated or the specifics of when and how many times he observed Defendant's truck cross the fog line. Although Trooper Presley acknowledged the importance of detailed report writing, he also confirmed that his report did not include these specific details, as he only included enough factual detail to establish probable cause.

required that a driver cross a line by any specific distance before a stop will be justified." *United States v. Bassols*, 775 F. Supp. 2d 1293, 1300 (D.N.M. 2011); *see United States v. De La Fuente-Ramos*, 242 F.3d 391, 2000 WL 1717186, at *5 (10th Cir. 2000) (unpublished). Furthermore, the highway which Defendant was driving on at the time was straight, flat, and in good condition, with light to medium traffic, and no inclement weather such as fog, high wind, or rain. Defendant also argues that the presence of three other vehicles' headlights at night made it "undeniably difficult for [him] to see." (Docket No. 21 at 8). However, the undersigned has no basis for concluding that the presence of headlights caused the traffic violations in question, such as any indication that the other drivers committed the same or similar traffic violations.[6] *See Salas*, 2012 WL 5828615, at *3 (In considering the circumstances, the court found that "a straight, flat highway (and the crossing halfway across the fog line . . . ) gave the deputy a reasonable suspicion (if not probable cause to believe) that the Defendant had violated 47 Okla. Stat. § 11-309(1)."). Therefore, the undersigned is likewise unpersuaded by this argument and concludes that the traffic stop, and subsequent search of the vehicle were lawful.

## **Conclusion and Recommendation**

Based upon the authorities relied upon herein, the undersigned United States Magistrate Judge **RECOMMENDS** that Defendant's Motion to Suppress Evidence (Docket No. 21) be **DENIED**.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(2), a party may file specific written objections to this Report and Recommendation within 14 days. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of

---

[6] Defendant claims that Trooper Presley "turned on his brights . . . illuminating the road and the back of [Defendant's] truck with a high intensity beam." (Docket No. 21 at 8). Trooper Presley testified that his brights were not on at the time.

7

Oklahoma on or before December 3, 2024. If specific written objections are timely filed, Rule 59(b)(3) directs the district judge to:

> consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). Failure to timely object waives a party's right to appellate review. *See United States v. Goebel*, 959 F.3d 1259, 1266–67 (10th Cir. 2020).

DATED this 19th day of November, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT