IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ERIK REY GARCIA,

      Defendants.

Case No. 24-CR-320-JFH

## OPINION AND ORDER

Before the Court is Defendant's Objections [Dkt. Nos. 33, 34] to Magistrate Judge Steele's Report and Recommendation [Dkt. No. 29], which recommends denying Defendant's Motion to Suppress [Dkt. No. 21]. For the reasons set forth below, Defendant's objections are overruled. Magistrate Judge Steele's Report and Recommendation [Dkt. No. 29] is adopted and Defendant's Motion to Suppress [Dkt. No. 21] is denied.

## BACKGROUND AND PROCEDURAL HISTORY

On October 8, 2024, an Indictment was returned against Defendant charging him with Felon in Possession of a Firearm. Dkt. No. 2. On November 5, 2024, Defendant filed an opposed Motion to Suppress, in which Defendant argued that he had been unlawfully seized as the result of a baseless traffic stop. Dkt. No. 21. In particular, Defendant argued that the reason given for the traffic stop – that Defendant had been "riding the fog line" – was disproven by the evidence in the case, and, as such, the officer's seizure of Defendant was unreasonable and the subsequent search of Defendant's vehicle (which yielded an illicitly possessed firearm) was unlawful. Dkt. No. 21.

Defendant's Motion was referred to Magistrate Judge Steele on November 6, 2024 [Dkt. No. 23], and an evidentiary hearing on Defendant's Motion was held on November 15, 2024. Dkt.

No. 28.  The Government presented the testimony of Oklahoma Highway Patrol Officer Elijah Presley, who was the officer who executed the traffic stop in question.  Dkt. No. 35 at 5-28.  Trooper Presley testified that on the night in question – about 1:00 a.m. on May 12, 2024 – he was patrolling Highway 75 near the Tulsa – Okmulgee county line.  Id. at 7.  The officer testified that the stretch of Highway 75 in question is straight and in good condition.  Id. at 8.  As Trooper Presley was driving north in the passing lane he observed a black Nissan Titan pickup truck in the right lane some distance ahead of him; there were two vehicles between Trooper Presley and the pickup truck.  Id. at 9.  Trooper Presley testified that he observed the pickup truck cross over the fog line (a white line line demarcating the edge of the lane) two or three times, with the truck's passenger side tires completely crossing over the line.  Id. at 9-10.  The trooper testified that, as he sped up to further observe the truck, he observed that the truck touched the fog line two more times.  Id. at 10-11.  The trooper initiated the traffic stop at that point.  Id. at 11.

Trooper Presley's dashboard camera partially captures Presley's perspective leading up to the stop.  Dkt. No. 21-1; 21-2.  This Court has reviewed the relevant portions of the dash cam videos.[1]  The dash cam video begins when Trooper Presley is some distance back from Defendant, and it is difficult to see the Defendant's truck on the video.  However, the video quality is quite low, and this Court has no difficulty believing that Trooper Presley's vision was better than the video captured by his camera.  Further, the dash camera only began recording footage 30 seconds prior to Presley activating his lights and sirens.  Dkt. No. 35 at 7.  As such, the video sheds no light on what Trooper Presley may have observed prior to the recording, and, indeed, Presley testified that there were infractions not captured on the video.  Dkt. No. 35 at 11.  As the video progresses,

---

[1] The Court will confine its discussion to Defendant's Exhibit 21-1; Exhibit 21-2 appears to capture substantively similar footage to 21-1 with the only difference being that it is of substantially lower quality.

Trooper Presley speeds up and moves in behind the Defendant's truck before turning on his lights and pulling Defendant over. The video appears to show Defendant quite close to the fog line, but it is unclear whether Defendant actually touches the line; the video does not show Defendant crossing the fog line.

On November 19, 2024, Magistrate Judge Steele issued his Report and Recommendation in this matter. Dkt. No. 29. Magistrate Judge Steele found that Trooper Presley's testimony was credible and, accordingly, the traffic stop of Defendant had been lawfully initiated based upon Trooper Presley's observation of Defendant's traffic infractions. Id. Magistrate Judge Steele accordingly recommended that this Court deny Defendant's Motion to Suppress. Id.

## ARGUMENT AND AUTHORITY

### I. The traffic stop of Defendant was justified.

The Defendant objects to the Report and Recommendation, arguing that Trooper Presley's dash cam video demonstrates that there was no valid reason for Presley to initiate the traffic stop of Defendant; Defendant further argues that the video footage contradicts the officer's testimony and, as such, it was unreasonable for Magistrate Judge Steele to hold that Presley's testimony was credible. Dkt. Nos. 34-35. After de novo review of the record, this Court does not agree.

**A. Standard of review and applicable legal standards.**

This Court will "consider de novo" Defendant's objections to Magistrate Judge Little's Report and Recommendation. Fed. R. Crim. P. 59(b).

### i. Governing Fourth Amendment standards.

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

A traffic stop, such as the one at issue, is a "seizure" within the meaning of the Fourth Amendment. *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1226 (10th Cir. 2008). The Tenth Circuit has stated that, in analyzing the constitutionality of a traffic stop, courts are to employ the "reasonable suspicion" standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Winder*, 557 F.3d 1229, 1133 (10th Cir. 2009).

This analysis requires a court to first ask "whether an officer's stop of a vehicle was justified at its inception." *Id*. A stop is justified at its inception when an officer has: "(1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *Id*. at 1134 (citing *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008)). To establish reasonable suspicion, an officer must provide "some minimal level of objective justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984). An officer need not "rule out the possibility of innocent conduct," so long as the "totality of the circumstances suffices to form a particularized and objective basis for a traffic stop." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 277-78, (2002)). Evidence falling "considerably short" of a preponderance standard may still satisfy the reasonable suspicion standard. *Winder*, 557 F.3d at 1134 (quoting *Arvizu*, 534 U.S. at 274).

    **ii.  Applicable Oklahoma law.**

At issue in this matter is Oklahoma Statutes Title 47, Section 11-309, which provides: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following requirements in addition to all others consistent herewith shall apply: A vehicle shall be driven as nearly as practicable entirely within a single lane."

The interpretation of this statute is, of course, a matter of state law. However, the Court is aware of no Oklahoma case law interpreting this precise statutory provision; instead, much of the case law pertaining to this statute (and identical statutes from other states) has arisen in federal courts, in disputes such as the present one. In the Report and Recommendation, Magistrate Judge Steele relied upon *United States v. Bassols*, 775 F. Supp. 2d 1293, 1300 (D.N.M. 2011) for the proposition that "driving on a lane marker" is sufficient to violate the statute at issue. Dkt. No. 29 at 6-7. *Bassols*, in turn, relied upon the Tenth Circuit's unpublished decision in *United States v. De La Fuente-Ramos*, 2000 U.S. App. LEXIS 29309 (10th Cir. 2000), in which the Tenth Circuit held that a vehicle "touching the lane line three times" was sufficient for a finding of reasonable suspicion under the Oklahoma statute.

Defendant objects to Magistrate Judge Steele's legal holdings, arguing that Magistrate Judge Steele erroneously fails to give due accord to the Tenth Circuit's decision in *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996). Dkt. No. 34 at 7-8. Defendant's objections are off base; Magistrate Judge Steele's Report and Recommendation is entirely in keeping with *Gregory*. But *Gregory* is of no avail to Defendant, as it is clearly distinguishable; *Gregory* concerned a traffic stop initiated by an officer upon observing a single instance of a vehicle crossing over the fog line on a winding mountain pass on a windy day. 79 F.3d at 975. These facts are clearly distinguishable from the present case, in which Defendant was on a straight, well-maintained

highway on a clear night, and the officer testified that Defendant crossed the fog line and drove on the fog line multiple times.

### B. Trooper Presley's testimony established reasonable suspicion for the traffic stop of Defendant.

In objecting to Magistrate Judge Steele's Report and Recommendation, Defendant primarily contends (1) that Trooper Presley's dash camera footage unequivocally demonstrates that Trooper Presley could not see Defendant until the officer was relatively close to Defendant's truck and (2) that the camera footage shows that Defendant's truck did not touch the fog line as the officer moved nearer to Defendant and pulled him over. Dkt. No. 35 at 2-5. From this, Defendant argues, Trooper Presley's testimony that he observed Defendant crossing the fog line several times is contradicted by the dash camera video, and it was error for Magistrate Judge Steele to find such testimony credible. Id.

Defendant's objections are off base, and his argument places more weight on the dash camera footage than it can comfortably bear. It is true that when the footage begins it is quite difficult to see Defendant's truck on the camera footage. But the camera footage is not high resolution, and the vantage point of the camera is relatively low within the vehicle. The Court has no difficulty in believing Trooper Presley that his vision is "far better" than the quality of the footage captured on the dash camera video. Dkt. No. 35 at 6. Further, the record demonstrates that the dash camera only records footage beginning 30 seconds prior to activation of the officer's lights and sirens. Dkt. No. 35 at 7. Thus, there is simply no video of any infraction that may have occurred prior to when the footage begins, and, indeed, Trooper Presley testified that there were infractions not captured on the video. Dkt. No. 35 at 11. This Court, from the evidence of the video alone, cannot conclude that Trooper Presley gave false testimony regarding Defendant's traffic infractions.

The entire issue of whether Trooper Presley could see Defendant prior to approaching near to him is something of a red herring. The video does not, in this Court's view, show the Defendant crossing the fog line entirely as the officer approaches Defendant, but, from the evidence of the video, it was entirely reasonable for Trooper Presley to conclude that Defendant was driving for several seconds *on* the fog line. Taking all circumstances into consideration – the road was straight and well-maintained and the weather was clear – Trooper Presley could have had a reasonable suspicion that Defendant, by driving for several seconds on the fog line, had violated 47 O.S. §11-309. Defendant's driving for several seconds on the fog line was, alone, sufficient to justify reasonable suspicion, and this conduct, taken together with Trooper Presley's prior observation of infractions by Defendant, more than suffices to establish reasonable suspicion for the initial seizure of Defendant.

Defendant objects that Magistrate Judge Steele did not account for certain negative driving conditions facing Defendant, which would render his errant driving reasonable – namely, that the presence of cars behind Defendant and Trooper Presley's use of his "brights" behind Defendant rendered it difficult for Defendant to see. Dkt. No. 34 at 6-7. Firstly, this Court does not agree that the video shows Trooper Presley brightening his headlights as he gets behind Defendant. On review of the video, the quality of Trooper Presley's headlights does appear to brighten somewhat as he nears Defendant, but, in this Court's view, this seems to be a consequence of the officer's lights combining with the headlights of the car behind Defendant for a relatively brief period. Lastly, the Court rejects the notion that the presence of a vehicle behind the Defendant as he drove constitutes any kind of driving obstacle; Defendant's argument is counter to common sense and experience. Every motorist of any experience is accustomed to driving with headlights behind and/or beside them without difficulty.

**CONCLUSION**

Upon de novo review of the issues raised in Defendant's Objection to Magistrate Judge Steele's Report and Recommendation [Dkt. No. 29], the Court finds that Defendant's Motion to Suppress [Dkt. No. 21] should be denied for all of the reasons set forth above.

IT IS THEREFORE ORDERED that Defendant's Objection [Dkt. Nos. 33, 34] is overruled, and the Court accepts Magistrate Judge Steele's Recommendation that the Motion to Suppress [Dkt. No. 21] be denied.

Dated this 19th day of December 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE